## CLEVELAND (City) v STATE ex FOULKS

Ohio Appeals, 8th Dist, Cuyahoga Co

No 11067.  Decided Dec 22, 1930

MIDDLETON, PJ, MAUCK and BLOSSER, JJ, (4th Dist) sitting.

Harold H. Burton, Henry S. Brainard and Francis B. Douglass, all of Cleveland, for City.

Stanton & Connell, Cleveland, for Foulks.

MAUCK, J.

The facts are not in dispute. It is not denied that the relator was guilty of an infraction of the rules of the Fire Department; that he was suspended by Mr. Granger and dismissed from the service by Mr. Whitlock. It was further agreed that George A. Wallace is the Fire Chief of the City of Cleveland and James E. Granger an Assistant Chief, that Edwin D. Barry is the director of Public Safety and Elliott H. Whitlock is the Commissioner of Smoke Inspection of the City.

It is also agreed that Chief Wallace was absent from the City and State and that James E. Granger had been designated to act as Fire Chief under the rules of the Department of Public Safety, and the orders of the Director of that Department, and that Edwin D. Barry, the Director of the Department of Public Safety was, at the time in question, confined by illness to his home outside of the City of Cleveland, and that the City Manager of the City had, on June 28th, 1928, designated Elliott H. Whitlock Commissioner of Smoke Inspection to perform the duties of the Director of Public Safety in the absence of Director Barry.

The sole question in dispute was whether or not the parties so acting as Fire Chief and as Director of Public Safety, were competent to take the action that they did take resulting in the relator's dismissal from the service.

It has been argued that this question has been determined in the unreported case of Ohio ex rel **Barrett v City of Cleveland**, de-

cided by the Court of Appeals of Cuyahoga County June 11th, 1923. It was decided in that case that the Assistant Chief of the Fire Department was without power to suspend a subordinate. The soundness of that opinion at that time cannot be questioned. The City Charter then, as now, provided in Section 82 thereof that the Chief of Police and the Fire Chief shall have the exclusive power to suspend any of the officers or employees under their respective management.

It was probably to avoid the effect of the decision in the Barrett case that the City Council the following year undertook to enact legislation that would enable some one to perform the functions of the Fire Chief and others during the unavoidable absence or incapacity of such officer. This it sought to do by the enactment of what is known as Section 76 of the Municipal Code which provides that when an administrative officer is about to be absent from the City, he shall notify his immediate superior of that fact, and such superior shall thereupon designate another officer to perform the duties attaching to the office of the absent officer.

The terms of this section are sufficient to cover the case and if the section is not rendered inoperative by section 82 of the charter already referred to, Mr. Granger as Acting Chief and Mr. Whitlock as Acting Director, had power to respectively perform all of the duties that might have been performed by Mr. Wallace and Mr. Barry had they been present. It is true that the charter provides that the Fire Chief shall have the exclusive right to suspend subordinates, but if it is competent for the Council by ordinance to provide that a designated subordinate shall act as Chief during the absence or disability of the Chief, manifestly such acting Chief is, for the time being, the Fire Chief himself, and as such Acting Fire Chief has the exclusive power to suspend.

There are very many instances in which the legislature has provided for an acting officer when exigency requires, and this is almost a necessity to prevent a paralysis of the public business, but in most such cases the office is statutory and there is no constitutional principle involved. An instance, however, that seems to us to be in perfect analogy to the situation at bar occurs in the provisions for temporarily filling the office of Probate Judge in the absence of that Judge or during his inability to attend court.

Sec 8, Art 4 of the Constitution has conferred upon the Probate Court jurisdiction of a certain character that has been con-

ferred upon no other court either by the constitution or by statute and such jurisdiction is consequently exclusive.

By section 7 of the same article the Judge of the Probate Court shall be elected as such.

By statute §1598 GC, it is provided, however, that when an exigency arises, the jurisdiction constitutionally conferred exclusively upon an elective probate judge may be exercised by a Common Pleas Judge. When so designated the substitute does not function as a Common Pleas but as an acting probate judge. While this statute has apparently received no judicial consideration, it has been the law of the state for many years, and is universally considered as a legitimate legislative enactment. We can see no way by which that statute can be sustained and the ordinance in question invalidated.

The legislation of the Council referred to is a reasonable provision, well adapted to enable the various departments of the City to function, although the occupant of a particular office may be temporarily incapacitated. The charter itself does not mean that the particular person occupying the office of Fire Chief must be always in the City and always in good health upon peril of having the function of his office fail to operate. It only means that a person at a given time acting as Fire Chief shall have the exclusive power to suspend, negativing the power of all other officials to so suspend.

Our conclusion is that the writ of mandamus was improperly awarded. The judgment of the Common Pleas Court is reversed and the petition is dismissed.

MIDDLETON, PJ and BLOSSER, J, concur.